Your Honor, there are two main issues in this case. Number one, whether this Court has jurisdiction over all the issues raised by the petitioner. And number two, whether the immigration judge's adverse credibility finding, which was affirmed by the BIA, was supported by substantial evidence. I'm confused about something in terms of how we're supposed to approach it. If he loses on timeliness, are we all done, or do we still reach the credibility issue, or do we just reach it by the more deferential approach of applying the motions for reconsider? I can't tell. My thought is, if he doesn't apply for asylum within a year, whether you run it from entry or the expiration of his visa, he's over a year either way. It would seem like the case is over at that point, but I'm not clear on it. Your Honor, as I mentioned in my brief, that in reviewing a timely filed motion to reopen, this Court can revisit all relevant issues raised in the underlying asylum claim. And the Eighth Circuit Court of Appeals indigenous versus non-binary asylum. The Supreme Court in Doherty says that those motions are discretionary and disfavored. Yes, Your Honor. However, they are reviewed for abuse of discretion standard. And we believe that in our motion to reopen, the BIA abused its discretion in not fully reviewing the Petitioner's claim that exceptional circumstances prevented him. I may have more to ask you about that, but I'd still like an answer to my first question. If he applied for asylum late, is his case over so that we do not reach the motion to reopen? No, Your Honor. I don't believe so. There is an exception to filing a late asylum application. The regulations require it. In fact, that exception is quite clearly stated in the regulations that failure to file a timely asylum application is not a bar to asylum if an applicant can establish exceptional circumstances, which I believe he established. He was in valid immigrant status until February of 2004. What's exceptional about that? People overstay visas. Your Honor, however, he was married to a U.S. citizen. He had an adjustment application The Department of Homeland Security could not deport him as long as the adjustment application is pending. Contrary to what the government had said in their answering brief, he was in a valid status. He had no reason to apply for asylum. He was going to get his green card through his marriage. And then once the adjustment application was denied, he was placed in deportation. Then he could apply. Then he applied for asylum. And that's exactly what he did. Are there any cases that support that? About whether... You don't have to follow the one-year rule if you think you're going to get a visa through your wife? Your Honor, no. The regulations that we cited in support, the regulations said that maintaining a valid immigrant or non-immigrant status is an exceptional circumstance for the one-year rule. And the regulations clearly say that, and I mentioned it in my brief. And secondly, even if he did not file his asylum application timely and he's barred, the judge still, or the board still had to decide on his withholding of removal claim, which we believe... His what? His withholding of removal claim, which we believe the judge relied on impermissible grounds, on grounds that are not supported by substantial evidence. Almost every single adverse credibility finding by the judge is not supported by substantial evidence. Just to make sure I know where we're going here, for purposes of this withholding of removal argument, he can be untimely. That is to say he can file for withholding of removal outside the one-year period. So even if you lose untimeliness with respect to asylum, he still has, procedurally at least, a valid withholding of removal claim. Yes, Your Honor. I mentioned that in my brief as well, that if the court finds that he did not give exceptional circumstances to excuse his one-year filing deadline, he should still, this case should still be remanded to the board to determine whether he qualifies for withholding of removal if he is credible. What's your best case? You say there's some cases. What's your best case for exceptional circumstances which excuse him from complying with the one-year? Your Honor, the case is the board decision matter of Y.L., the one I, the one that I cited in my brief. Okay. That case involved a young man who was a minor, and he was incarcerated, and he could not file his asylum application within a one-year period. And the board said that that was, incarceration was in exceptional circumstances. And, and He was an incarcerated child? Yes, Your Honor. He was incarcerated. That was one of the It sounds like a better excuse than your fellow has. Yes, Your Honor. I, I agree it's a better excuse. However, the regulations say that being in a valid immigration status, a person does not have to apply for asylum if he was able, if he's able to get his green card through his wife. And what regulation is that one precisely? Your Honor, the regulation, Your Honor, it's 8 CFR 208.4 A5. 208.4 A5. Okay. But the IJ says, even if the one-year doesn't apply, he still didn't apply within a reasonable time after the visa expired, right? Yes, Your Honor. Okay. Now, isn't that a factual finding that deprives us of jurisdiction to review that? Your Honor, it's a mixed question of law and fact, which the Court recently in Ramadan v. Alberto Gonzalez said that this Court has jurisdiction to review, that application of law to undisputed facts is reviewable in this Court. And in this case, it's quite Your Honor, but the thing is that the record is clear that he entered the United States in November of 2002. His visa was expiring in February. Before the expiration of the visa, he applied for an extension. In May, he got married to a U.S. citizen and applied for adjustment of status. And then his, in February of 2004, his adjustment application was denied.   So these are all factual questions. Well, the BIA says it in terms of law. The BIA says there is no legal support for Respondent's contention that the one-year asylum filing deadline begins to run when an alien's adjustment of status application is denied. You're saying they're wrong on that as a matter of law. Yes, Your Honor. So tell us the citation. Your Honor, they are wrong because the regulations state, I mean, clearly state that maintaining Hold on now. We all have the regulation here, I think. Where does it say? Yes, Your Honor. The regulations say the extraordinary circumstance may include serious illness, legal disability, maintaining TPS status, maintaining lawful immigrant and nonimmigrant status. It says clearly. He doesn't have serious illness. He doesn't have legal disability. He doesn't have ineffective assistance because he didn't do any LASADA compliance. Yes, Your Honor. And he's maintaining lawful immigrant and nonimmigrant status. It clearly states that. That would just run him to the end of his visa. Your Honor, that's not true because a person who applies for a timely extension of his visa, he's in a lawful status. In fact, DHS cannot deport that person. Similarly, a person who has a pending adjustment application pending cannot be deported. And it says, even assuming that's true, until a reasonable period before the filing. Well, Your Honor, two months his visa, his extension, excuse me, his adjustment application was denied on February 11th of 2004. On May 29th, in less than two months, he applied for asylum. I believe that's pretty reasonable under the circumstances. Well, that may be your opinion, but the I.J. had a different opinion. And isn't that a discretionary call? Your Honor, but the I.J. did not even look at that. In fact, the I.J. used the first, excuse me, if you look at the I.J.'s decision, she claimed that the one year started as soon as he entered the United States. In fact, she did not even look at the April, excuse me, the February 11, 2007, excuse me, 2004 date as the starting point. She didn't say that, you know, it's my discretion under this, you know, she didn't even look at that date. So we believe it's not discretionary because she did not look at the factors that she was required by law to look at. His application for adjustment of status was denied in February, on February 11 or 12. Yes, Your Honor. And he files for asylum about three months later. Yes, Your Honor. And the I.J. says, in my opinion, that's an unreasonable delay. But, Your Honor, that's not what the I.J. said. If you look at the immigration judge's decision, he claimed that the deadline began on February 1 of 2003 when his visa expired. He did not look at the February 11, 2004 date when his adjustment application was denied. So that's the point. She applied the law incorrectly. She should have looked at, she should have decided whether it was reasonable or unreasonable or exceptional circumstances, excused the one-year filing deadline from February 11 of 2004 when the adjustment application was denied. Instead, she went back to a date that, and I believe based on that, the board and the BIA were incorrect. They did not apply the proper legal standard here. Thank you, Counsel. Thank you, Your Honor. I'll stay up 40 seconds from the button. Counsel? Good morning. May it please the Court? My name is James Grimes, and I'm here on behalf of the Attorney General. Could you speak up just a second? Does that help?   Okay. Talk louder, too. I'll try that, Your Honor. Just to clarify, our position is the first petition for review with respect to the board's initial decision is 53 days out of time and should be dismissed because the court doesn't have jurisdiction to review it. Say that again. The first petition for review concerning the board's March 16, 2006 decision is 53 days out of time, and therefore this court should dismiss that petition for review. You have no jurisdiction over that one? That's correct, Your Honor. So the only issue before the court is whether the board abused its discretion when it denied the motion to reopen and reconsider on June 22, 2006. The court does have jurisdiction to look at that issue. Now, he raised four issues in that motion. The four issues concerned asylum, adverse credibility, voluntary departure, and an ineffective assistance challenge. He's not addressed the voluntary departure and ineffective assistance issues. He wouldn't get to any of it if he didn't apply for asylum in a timely way. You could get to the board's basis for denying the motion to reconsider as to adverse credibility because that goes to withholding. That would be the only point that would be before the court. Just to make sure I've got this nailed down properly, even if he has not filed timely within the one-year period, nonetheless, he's entitled procedurally to withholding. Procedurally he could apply. The bar that said in Section 1188 doesn't apply. So to the extent that the BIA might have misinterpreted the facts in the record in denying the motion to reconsider or reopen with respect to withholding, that question is properly in front of us. Well, I think you have to look at the basis for the board's decision to find that the basis for the board's decision was you haven't given us a reason to change our mind because you've just raised the exact same issues. Well, but the reason is you screwed it up. I'm sorry, Your Honor. The reason is, to the BIA, you misunderstood the facts, so you should reconsider. That's right. What he said was the exact same things that he said before, and the basis for the board's decision was you did not give us a reason to change our mind, therefore, we're not going to reconsider. Well, on that one, I have to say I disagree. I'm not yet getting to the point of whether or not they abused their discretion, but if you said the same thing before and the BIA misread it, didn't read it, did something, got your name wrong and read the wrong file, the fact that you come back in and you say the same thing again, there's a perfectly good ground for reconsideration because they messed it up. Well, I would suggest that he's, in a sense, adopted the board's finding in that respect, and I'm referring to pages 21 and 22 of his brief where he quotes the board's decision and says, see, look, I raised exactly the same issues. Now, if he wanted to argue that the board got that wrong, he could, but what he said is essentially, in trying to make his jurisdictional argument, that, yes, I did raise the same issues. Well, that's why the board denied the motion. So my point is the board did not abuse its discretion in denying the motion to reconsider because he didn't give them a reason to change their mind. Could you? Yes, Your Honor.  I understand the point. If I say it once and they missed it and they totally missed it and they're totally wrong, the fact that I now say it again as a ground for reconsideration seems to me a perfectly sensible ground for reconsideration. And I understand, Your Honor. And perhaps as we discuss some more, I can maybe convince you, but Your Honor has it. Counsel, let me ask you about something else that I need help on. We've asked some questions about the time bar, and counsel for the petitioner says that the reg at 1208.4, looks like 854. Yes, Your Honor. It says lawful immigrant or nonimmigrant status until a reasonable period before the filing, and there was only two months between when his lawful nonimmigrant status ended and when he filed. What's your response on that? His lawful status expired in February of 2003, not 2004. I missed some words there. His lawful status expired in February 2003 when his visa expired. February 2004 was just when his adjustment application was denied. Applying to adjust. What he says is that he had lawful status as long as his application was pending. And that's not correct. In fact, in response to questions about that, I don't believe he cited any case that says that. Did he cite something? Lada. Lada is the case we cited in our brief that says that simply applying does not render your status lawful, and I think that should be especially the case here where we have apparently the basis for the application was an apparently fraudulent marriage. So applying for adjustment of status does not make you in lawful nonimmigrant status. That's correct. That's what the board held, and that's what this court has said, that that doesn't make your status lawful. What about the application for extension of the visa? What consequence does that have? Well, in this case, it doesn't have any consequence because the agency found that he abandoned it. The agency gave him until June of 2003 to support his application to extend, and he did not respond. So the agency determined that he had abandoned that application. And so he abandons that as of June 2003, which he had until that date to submit supporting materials? They gave him until that date to submit, but that didn't mean that he was in status, and I would like to refer the court to pages 84 and 85 of the record, where he conceded that his status expired February 1, 2003. That's a different question. After that June deadline expires, how long is it then before he then files for asylum? It's about 10 months. So it's 10 months from that time. Yes, Your Honor. And the board said in the motion to reconsider that 10 months is not a reasonable period of time. Okay. So really, his application, he filed it 14 months after his period. Here's my problem with this case. I think I'm with you up to the point where you say, listen, there's not a timely application for asylum, and the only thing properly that's available to him procedurally is withholding. But then I have trouble because my sense of what the IJ did and what the BIA did with the facts of this case is they totally missed it. I mean, there's an unusually large disparity between what he testified to and what the IJ says he said and what the BIA says he said. And were this coming to us on direct review on asylum, for me this would be a fairly easy case of saying, you know, this is just, you just missed it. Well, Your Honor, on the merits, I think we conceded at footnote 14 of our brief that there are some problems with the adverse credibility determination. The IJ did get some things wrong, but putting those aside, there are other aspects of the merits determination that are well supported by the record. And I'm talking about the demunifying, the way he answered questions, the fact that he was in this fraudulent marriage. Well, he didn't. There are many reasons to think this might have been a fraudulent marriage. I don't want to say this looks like a great marriage. On the other hand, there's no finding that this is a fraudulent marriage. Well, that's an interesting point, Your Honor. And if you look at page 134 of the record, their government counsel asked, said that, well, because he's removable on the overstay ground, we're not trying to prove the fraudulent marriage ground. So the government just asked the immigration judge to consider the fraudulent marriage issue as it goes to discretion and to the merits of his applications. So the immigration judge said, that's fine, I'll do that. There are differing burdens of proof. The government has the burden of proof on removability. You've got the burden of proof on the issue of your applications. And so the immigration judge then actually referenced the fraudulent marriage. If you look at page 78 of the record, he was talking about the fraudulent marriage. And you do have Ms. Bean's confession, which is corroborated by his testimony about how she treated him, the fact that she was pregnant by another man three months after they got married. No, no, I'm quite familiar with the record. But I come back to the point that there's no finding by the IJ that this was a fraudulent marriage. There's testimony from which he certainly could have concluded that. Well, I would respectfully disagree. I think that's what the immigration judge is saying, that there's this evidence of a fraudulent marriage. Well, where exactly is the finding by the IJ that this was a fraudulent marriage? I'm talking about page 78 of the record. Hang on a second. Yes, Your Honor. See, the immigration judge actually starts on the previous page talking about timeliness and then sort of blends the timeliness issue into the issue about the marriage. And she says that he's made statements regarding Ms. Bean's position in their marriage. You're talking so fast I can't hear what you're saying. I'm sorry, Your Honor. I keep looking at the time that's available. Listen, you can talk slowly so that we can understand. And if it takes us longer than ten minutes, it takes us longer than ten minutes. All right. Put my nose in the finding by the IJ that this was a fraudulent marriage. I think I'm about seven lines down on 78. I do note that I did not find Respondent convincing today either in his asylum claim or his explanation. He often babbled, offered confusing dates, was unable to mention his own marriage date or the efforts of when he got together with Ms. Bean. Therefore, I do not find him convincing today in any manner in which he testified. And if you go up above it, that's far short of a finding that this is a fraudulent marriage. What's the sentence just preceding that one? That's where I was about to go where he says, although I will not make an outright finding that the engaged marriage fraud is Ms. Bean is not here and available to cross-examine, Respondent has made statements regarding, and he says regarding twice, regarding Ms. Bean's position regarding their marriage. So I think that's what, I mean, that's the part that I have in mind. He doesn't make the finding, although there's ample evidence from which he could have made it had he thought he had to go there. That's correct. But he doesn't. But he didn't have to make a finding of marriage fraud. I'm saying that that's a factor in the credibility calculus. If you need the adverse credibility determination to support the rejection of withholding of the removal. Yes, that is our position. And the position is the one-year bar doesn't apply to withholding. Yes, Your Honor. The adverse credibility determination is what sustains the decision saying no withholding of removal. And the adverse credibility decision, even though part of it is probably no good because he says, well, a two-page letter doesn't amount to a report. There are. Because he's talking about demeanor and what looks like a phone amount. Yes, Your Honor. He's got the logic of it, right? Yes, his demeanor, the way he answered questions, the babbling, the confusing. I'd like to come back to Your Honor's point and see if I can answer what Your Honor is saying. The only issue as to removability was whether he's an overstay. Whether he was in a fraudulent marriage was no longer an issue because of discussion on page 134. So the immigration judge did not need to make a finding of whether there was a fraudulent marriage finding as to that ground. But it certainly is a factor that was considered, the immigration judge referenced, in deciding whether or not this alien was credible. And that's my only point as to that. I understand that. And I responded because you kept calling it a fraudulent marriage, which is not established in the record. Point well taken, Your Honor. I don't think he ever found fraudulent marriage. He just said the testimony looked dishonest on the marriage. So I don't believe the man. I think that would be a fair characterization. Yes, Your Honor. So we would ask that you dismiss the first petition for review and deny the second petition for review. I think you've answered this question, and it was Judge Kleinfeld's question, but I want to make sure I've got it straight. If we were to disagree with you on the question as to whether or not an adverse credibility finding is sufficiently supported, and if we were to say were this coming to us straightforwardly on adverse credibility, we would reverse, that is to say we have to accept his statements as credible. In your view, is that a sufficient basis for reversing or rather granting the petition with respect to the motion to reconsider? Because if the facts are true, there's a potential basis for withholding? My answer would be no because of the remaining aspects. What remaining aspects? The demeanor issue. No, no, no, no. That goes back to credibility. I'm sorry, Your Honor? That goes back to credibility. I'm assuming that we're assuming credibility. I think credibility was the basis for the withholding denial. So I think if you found that the Board abuses discretion in denying the motion with respect to the adverse credibility determination, I don't believe there was another basis for denying the adverse credibility determination. I don't know there would be. Here's my question. Yes, Your Honor. Assuming credibility, which I don't ask you to concede, but assuming credibility, is there a sufficient basis in the record for withholding? Well, I don't know if the agency addressed that assuming credibility, so I don't think I can answer that question. We would have to send it back to the Board. Based upon those presumptions, I suppose you would. Let me ask you something else about the hypothetical question that Judge Fletcher asked you. Let's say that we were to hold that if we were reviewing it on a petition for review of the adverse credibility determination itself, we would not be satisfied with the basis in the record for that determination. Is that the way we review it, or is there any difference because it comes to us on a motion to reconsider? Well, I suppose the issue is somewhat different, whether the Board abuses discretion. Does the Board get any more room? I'd have to think. I'm not sure. Because it comes to us on a motion. I don't know what the difference is between substantial evidence on direct review and abuse of discretion, which is a higher standard. I think the higher standard would be the abuse of discretion, given what the Supreme Court has said about motions to reconsider and reopen being disfavored. So I think there would be, there's an extra layer there that the Court would have to go through. So I suppose it's possible the Court could say, could still deny the petition for review. Thank you, counsel.  Thank you, Your Honor. Your Honors, I believe that this case should be remanded back to the Board to determine whether maintaining a valid or whether filing an adjustment application amounts to lawful status on the one-year issue. And if the Court finds that the respondent has not satisfied exceptional circumstance for filing his application after one year, then this case should be remanded to the Board on the withholding of removal claim. I believe that the evidence in the record, if correct, shows that the respondent has a clear probability of harm if he returns to Nigeria. I have no further questions. Thank you, counsel. Thank you. Aziki v. Gonzalez is submitted. We are adjourned for the day.
judges: Kleinfeld, Silverman, Fletcher